**Randall Allen RANKIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–92–00806–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 29, 1999.

Catherine Clarkson, Houston, for appellant.

Julie Kilbert, Houston, for appellee.

Panel consists of Chief Justice MURPHY and Justices SEARS and DRAUGHN.[1]

## OPINION ON REMAND

ROSS A. SEARS, Justice (Assigned).

Appellant was convicted by a jury of aggravated sexual assault of a child and assessed punishment at fifty years confinement in the Texas Department of Criminal Justice—Institutional Division. On January 20, 1994, this court affirmed appellant's conviction. *Rankin v. State*, 872

S.W.2d 279 (Tex.App.—Houston [14 th Dist.] 1994). Appellant filed a petition for discretionary review, which was granted by the Court of Criminal Appeals. On April 10, 1996, the Court of Criminal Appeals issued an opinion reversing and remanding the case to this court for further analysis. *Rankin v. State*, 974 S.W.2d 707 (Tex.Crim.App.1996). After the State filed a motion for rehearing, the court issued a new opinion again reversing and remanding the case for further analysis.

On original submission, this court summarized the facts as follows:

On June 3, 1991, Tiffiney, the complainant, her sister Wendy, and their friends Linda, Jessica and Tabitha were swimming and playing at Jessica's house. Appellant was also present. At some point in the day, Appellant offered the girls a chance to go horseback riding. Linda, Wendy and Tiffiney then took turns riding Appellant's horse.

Linda, age 7, was the first one to ride the horse. She was wearing her bathing suit and a pair of biking shorts. Appellant told her she could not ride the horse wearing her shorts, even though before, she had ridden his horse wearing those shorts. Linda removed the shorts, and Appellant threw them to the ground. When he lifted her onto the horse, Appellant placed his hands between her legs and on her "privates." On previous occasions when Linda had ridden Appellant's horse, Appellant had given her a foot boost, or she had gotten on the horse by herself. Appellant then led the horse and gave her a ride. While near a wooded area, Appellant stopped the horse and told Linda that she had an ant "down there" by the bottom part of her bathing suit. He began "picking" at her underneath her bathing suit, and touched her "privates." Linda asked to get off the horse to remove the ant, but Appellant refused to let her off. Instead, he claimed that he had removed the ant. They circled around two more

1. Senior Justices Joe L. Draughn and Ross A. Sears sitting by assignment.

times, and again Appellant told her there was an ant in the same place. He began "picking" at her "privates" and Linda asked to get off the horse. She testified that she felt very uncomfortable with Appellant picking at her.

Wendy, age 9, was the next girl to ride. When Appellant placed her on the horse, he put his hands between her legs and cuffed his hands "real tight" around her privates. Appellant rode the horse with Wendy. He began moving his hands under the elastic of her bathing suit. At one point, Appellant got his finger underneath the elastic, and started moving his finger towards the center of her "private." Wendy pretended that there was a bug on her leg, and tried to "switch" the "bug" away. She did not say anything because she was scared. On the way back to the other girls, Appellant put his hands on Wendy's breasts, claiming that there was an ant on her breasts. She "sort of" pushed his hands away. When she got off the horse, she collected her things and went home.

Tiffiney was the third girl to ride Appellant's horse. She was 7 years old at the time. Appellant picked her up and placed his hands on her "privates" to lift her onto the horse. While on the horse, Appellant sat behind her, rubbed her "boobies" and placed his finger inside her bathing suit top. He rubbed her "butt" real hard, and bent her head back and attempted to kiss her. Using an anatomically correct doll, Tiffiney demonstrated how Appellant placed his finger inside her bathing suit bottom and put his finger inside her private. She testified that it hurt "real bad" and that blood came out when he removed his finger. She told Appellant to "stop" and that she wanted "off," but Appellant "meanly" told her "no," and told her not to tell anyone about what happened. When the horse got near a fence, Tiffiney jumped off.

That night, Tiffiney and Wendy told their mother that Appellant had "touched them." The next morning, Tiffiney's mother went to Jessica's house and asked Jessica's mother if she could talk with the other girls. She agreed. Tiffiney's mother asked them "if they knew the difference between a good touch and a bad touch." They all said, "yes." Then, she "asked them if the man who was over there on the horse had touched them in bad ways." Linda responded "yes." Jessica's mother and Tiffiney's mother waited until Linda's mother got home from work, and then all three women called the constable. On June 13, 1991, Detective Bassham of the Harris County Sheriff's Department interviewed Tiffiney, Wendy and Linda. In August of 1991, Tiffiney and her family moved to Odessa, Texas.

On January 13, 1992, Dr. Owen Grossman examined Tiffiney. During the examination, Tiffiney described a "bad touch" by a male. She explained that this touch was to her vagina, that it hurt, and that bleeding had occurred. She told the doctor that she had been told not to tell anyone, and had been given candy. The examination of Tiffiney's genital area revealed that the distance between the two edges of her hymen was larger by one to two millimeters than normal for a girl Tiffiney's age, and that her vaginal tissue was thin and avascular, with a different than normal appearance. Based upon his examination, it was Dr. Grossman's opinion that Tiffiney had been penetrated.

Appellant testified that he is married and has two children. He stated that he picked most of the children up from behind with his fingers on their rear ends, and then spread their legs out on the horse. He stated he did not reach up under their crotches. He claimed that he picked them up in this manner because the horse was huge, and he was not tall enough to pick them up by their arms and get them over the saddle. He

stated that he did not think one of his fingers could have gone under them, but that he could be mistaken. He testified that he did not pick Wendy up in the same manner, but instead gave her a foot boost up, because she was larger. Appellant claimed that there were red ants on the trees which the girls had been climbing. Some of those ants got on Appellant, his son and the girls. He stated that he told Linda there was an ant on her leg, but made no attempt to get it off her.

Appellant's son, Allen, testified at trial. He stated that he was out in the pasture with his dad on June 3, 1991, and that his dad did not touch or rub any of the little girls. He stated that his dad did not lead the horse around, but instead he led the horse around that afternoon.

Appellant's trial counsel objected that the evidence of acts committed by the defendant with Wendy and Linda violated both Rules 404(b) and 403 of the Texas Rules of Criminal Evidence. The trial court overruled both objections. On original submission, appellant complained of the trial court's rulings and further complained of the trial court's failure to give a limiting instruction at the time the extraneous acts were admitted into evidence. We affirmed the trial court's ruling, concluding that the evidence was admissible to show a common scheme or plan and that the jury received the proper limiting instruction at the time it received the court's charge.

The Court of Criminal Appeals has remanded this case to us for consideration of whether the extraneous offense testimony is relevant to a fact of consequence. If we find the evidence to be relevant, we are then to perform a Rule 403 balancing test. The court has found the trial court erred in failing to give a limiting instruction at the time the evidence was admitted. Therefore, if we find the evidence admissible under Rule 403, we are to conduct a harm analysis of the court's error in failing to give a timely limiting instruction.

We must first determine whether the extraneous offense testimony was relevant to a fact of consequence in the case. In the trial of a criminal case when the defendant does not dispute that the conduct in question occurred, but he does claim the act was free from criminal intent, extraneous offenses are relevant to prove guilty intent. *See Plante v. State,* 692 S.W.2d 487, 491–92 (Tex.Crim.App.1985).

In this case, appellant was charged with sexually assaulting Tiffiney. He defended his actions by stating that he was simply helping her get on the horse and had no intent to sexually assault her. The fact that Linda and Wendy testified to almost the same facts demonstrates that his actions were intentional, not accidental. The more often an act has occurred, the less likely it occurred unintentionally. *Id.* Therefore, the evidence was relevant to the elemental fact of intent. *See Taylor v. State,* 920 S.W.2d 319, 321 (Tex.Crim.App. 1996), *cert. denied* 519 U.S. 951, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996).

Having found the evidence relevant to an elemental fact of consequence, we must now determine whether the evidence should have been excluded under the balancing test of Rule 403. Rule 403 of the Texas Rules of Criminal Evidence provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

The Court of Criminal Appeals in *Montgomery v. State,* 810 S.W.2d 372, 393 (Tex. Crim.App.1990), set out the factors to be considered in a Rule 403 balancing test:

> Therefore we hold that where relevant criteria, viewed as objectively as possible, lead to the conclusion that the danger of unfair prejudice substantially outweighed the probative value of the

proffered evidence, the appellate court should declare that the trial court erred in failing to exclude it. Relevant criteria gleaned from the authorities include, inter alia, that the ultimate issue was not seriously contested by the opponent; that the State had other convincing evidence to establish the ultimate issue to which the extraneous misconduct was relevant; that the probative value of the misconduct evidence was not, either alone or in combination with other evidence, particularly compelling; that the misconduct was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious. Accordingly, when the record reveals one or more such relevant criteria reasonably conducing to a risk that the probative value of the tendered evidence is substantially outweighed by unfair prejudice, then an appellate court should conclude that the trial court acted irrationally in failing to exclude it, and thus abused its discretion.

In this case, the ultimate issue of intent was seriously contested by appellant. Appellant's defense rested on the theory that he had touched the complainant unintentionally and had no intent to gratify his sexual desire. Appellant denied riding the horse with the complainant. He testified that he only lifted her onto the horse because the horse was large. The only testimony the State presented other than that of the complainant and the other victims was the testimony of the doctor who examined the complainant and a neighbor who saw the girls riding the horse in her backyard.

The extraneous offense evidence in this case was of a compelling nature in that each girl described almost identical conduct on appellant's part. Further, there was testimony that the complainant related some facts inconsistent with the offense. Because of the complainant's confusion in her testimony, the testimony of the other victims demonstrated that the complainant was not confused about the way appellant committed the offense.

■ Finally, this evidence was not of such a nature as to impair the efficacy of a limiting instruction. The events described by Linda and Wendy, being no more heinous than those described by Tiffiney, were not likely to create such a prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose. As outlined in *Montgomery*:

> The appellate court should not conduct a de novo review of the record with a view to making a wholly independent judgment whether the probative value of evidence of "other crimes, wrongs, or acts" is substantially outweighed by the dangers of unfair prejudice. It should reverse the judgment of the trial court "rarely and only after a clear abuse of discretion." This appellate deference is a rule of judicial restraint, intended, once again, to avoid the anomaly of having appellate courts usurp a function that the system assigns to the trial court.

*Montgomery*, 810 S.W.2d at 395. Given the substantial probative value of this evidence, the trial court did not abuse its discretion in refusing to exclude the extraneous acts evidence under Rule 403.

■ Finally, the Court of Criminal Appeals has instructed us to determine whether the trial court committed reversible error when it gave a limiting instruction to the jury at the time the jury was charged instead of at the time the extraneous offense testimony was admitted.

Rule 105 of the Texas Rules of Criminal Evidence provides that "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." During the trial, appellant requested that the jury be instructed on the purpose for which they could consider the extraneous offense testimony. The trial court refused the instruction at the time the evidence was admitted, but gave the

instruction in its charge to the jury. The Court of Criminal Appeals held the trial court erred in refusing to give the charge at the time the evidence was admitted and remanded to this court to conduct a harm analysis.

█ We must first address appellant's contention that we should conduct a harm analysis under former rule 81(b)(2) of the Texas Rules of Appellate Procedure. In the court's original opinion, the Court of Criminal Appeals instructed us to conduct a harm analysis under Rule 81(b)(2). That opinion was issued prior to the promulgation of the new rules of appellate procedure. The new rules became effective September 1, 1997, while the case was pending on rehearing. The new appellate rules apply to all cases that were pending at the time the rules became effective unless "their application in a particular proceeding then pending would not be feasible or would work injustice, in which case the former procedure may be followed." *See Order Approving the Texas Rules of Appellate Procedure,* Misc. Docket No. 97–9139 (Tex.Crim.App. Aug. 15, 1997). The application of the new rules to this case would neither render the rules unfeasible, nor work an injustice.

█ Under former rule 81(b)(2), the harm analysis determined whether there was a reasonable possibility that the error contributed to the conviction or punishment. Under the current rule, we apply that standard only when conducting a harm analysis for constitutional errors. TEX.R.APP. P. 44.2(a). We apply the standard set out in Rule 44.2(b) to non-constitutional errors. Under Rule 44.2(b), appellant must show that a substantial right was affected. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has a fair assurance that the

error did not influence the jury, or had but a slight effect. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

The trial court submitted a proper limiting instruction in the jury charge. When the jury was deliberating, they had been instructed not to consider the evidence for purposes of character conformity. There is no evidence to show the jury formed an opinion prior to the time it began its deliberation. Further, there is no evidence to show the jury was surprised to find no mention of the crimes against Linda and Wendy in the court's charge. The indictment, which alleged appellant committed sexual assault against Tiffiney, was read prior to the start of the trial.

Further, 'the nature of the extraneous offense testimony was not the type to be misconstrued as character conformity evidence. The offenses against Linda and Wendy occurred at the same time as the offense against Tiffiney. The offenses were also similar in nature to the offense against Tiffiney. Therefore, the danger of the evidence being considered for an improper purpose was remote. Appellant has failed to demonstrate harm in the failure to instruct the jury at the time the evidence was admitted. We conclude the timing of the court's instruction to the jury did not affect a substantial right.

Having reviewed each issue as instructed by the Court of Criminal Appeals, we find no reversible error. The judgment of the trial court is affirmed.