**Jerry Lee PEDERSEN, Appellant**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–06–00228–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Sept. 26, 2007.

Decided Oct. 24, 2007.

James Rodgers, Judy Hodgkiss, The Moore Law Firm, Paris, for appellant.

Sue Korioth, Special Prosecutor, Lamar County Dist. Atty's Office, Dallas, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice MOSELEY.

A jury found Jerry Lee Pedersen (Pedersen) guilty of two counts of indecency with a child and assessed his punishment at twenty years' imprisonment for both counts. *See* TEX. PENAL CODE ANN. § 21.11 (Vernon 2003). The complainant in each case was Pedersen's younger daughter, L.P. Pedersen now appeals, raising nine points of error.

## I. The Trial Court Did Not Err By Not Requiring the State To Make an Election

■ In his fifth and sixth points of error, Pedersen contends the trial court erred by failing to require the State to make an election among the various criminal incidents suggested by the evidence as the basis for submitting the charges to the jury. He further asserts the evidence is legally insufficient to support the jury's verdicts of guilt.

### A. The Election

■ Upon timely request by a defendant, the State must "formally differentiate the specific evidence upon which it will rely as proof of the charged offense from evidence of other offenses or misconduct it offers only in an evidentiary capacity." *Phillips v. State*, 193 S.W.3d 904, 910 (Tex. Crim.App.2006).

> This allows the trial judge to distinguish the evidence which the State is relying on to prove the particular act charged in the indictment from the evidence that the State has introduced for other relevant purposes. Thus, the trial court can instruct the jury on the proper use and weight to accord each type of evidence. Moreover, the election requirement protects fundamental rights such as notice and unanimity, insuring both that the defendant is aware of precisely which act he must defend himself against, and that the jurors know precisely which act they must *all* agree he is guilty of in order to convict him.

*Id.* (footnotes omitted).

In this case, Pedersen did not ask the State to make such an election. Therefore, Pedersen did not preserve for appellate review the issue of whether the trial court erred by not directing the State to make an election in this case.

### B. Legal Sufficiency

■ In assessing the legal sufficiency of the evidence to support a criminal conviction, we must consider all the evidence adduced at trial in the light most favorable to the jury's verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Powell v. State*, 194 S.W.3d 503, 506 (Tex.Crim.

App.2006). We must give deference to "the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See Jackson,* 443 U.S. at 318–19, 99 S.Ct. 2781. In reviewing sufficiency, we should also look at "events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Cordova v. State,* 698 S.W.2d 107, 111 (Tex.Crim.App.1985). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Barnes v. State,* 876 S.W.2d 316, 321 (Tex.Crim.App.1994); *Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim.App.1993). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State,* 152 S.W.3d 45, 49 (Tex.Crim.App.2004). On appeal, the same standard of review is used for both circumstantial and direct evidence cases. *Id.; Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App.2007).

A person commits the offense of indecency with a child if the person "engages in sexual contact with the child...." TEX. PENAL CODE ANN. § 21.11(a)(1). The term "sexual contact" is statutorily defined as the "touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child" with the intent "to arouse or gratify the sexual desire of any person...." TEX. PENAL CODE ANN. § 21.11(c). The statute of limitations for this crime runs until the tenth anniversary of the victim's eighteenth birthday. TEX.CODE CRIM. PROC. ANN. art. 12.01(5)(B) (Vernon Supp.2006).

The State's indictment charged Pedersen with two separate counts of indecency with a child. The first count of the indictment alleged Pedersen "intentionally or knowingly, with the intent to arouse or gratify the sexual desire of said defendant, engage[d] in sexual contact by touching the breast of [L.P.], a child younger than 17 years and not the spouse of the defendant." The second count of the indictment alleged Pedersen "intentionally or knowingly, with the intent to arouse or gratify the sexual desire of said defendant, engage[d] in sexual contact by causing his penis to touch [L.P.], a child younger than 17 years and not the spouse of the defendant."

The evidence, when viewed in the light most favorable to the jury's verdict, showed the following: L.P. had just turned seventeen years old one month prior to the trial in this case.[1] L.P. testified that in the spring of 2002, when she was about twelve years old, she had gone to visit Pedersen during a period when he had custody of her pursuant to a divorce decree. At night before bedtime, Pedersen would typically rock L.P. to sleep in a rocking chair before later carrying her to her bed. L.P. wore a T-shirt and shorts to sleep in. On at least one occasion (possibly more) during this spring 2002 visit, Pedersen came into the bedroom where L.P. was, laid down behind her in the bed, draped his arm across her body, placed his hand on top of her T-shirt, and rubbed her breast area.

L.P. testified that on other occasions, Pedersen reached underneath her shorts to rub the area underneath her underwear. Then, according to L.P., "He [Pedersen] would hump me." L.P. explained that by using the term "humping," she meant that Pedersen would move his hip area back and forth against her buttocks. During this "humping," she could feel Pedersen's erect

1. The trial on the merits occurred October 26 and 27, 2006.

penis as it rubbed against her through the various layers of clothing that otherwise separated the two.

These events occurred at Pedersen's house in Paris, Lamar County, Texas. L.P. testified that these contacts by Pedersen were not merely accidental, "It was more than that."

■ Pedersen now argues that this evidence is legally insufficient because L.P. did not testify about a specific, discrete date on which each of the assaults allegedly occurred. Pedersen cites *Chafin v. State*, 95 S.W.3d 549, 557–60 (Tex.App.-Austin 2002, no pet.), for the proposition that the State's failure to connect each alleged crime with a specific date constitutes legally insufficient proof to support a conviction.

In *Chafin*, the Austin court of appeals reversed a four-count indecency conviction originating from Hays County. *Id.* at 560. The State's indictment charged Chafin with touching the juvenile victim's breast with the intent of gratifying Chafin's sexual desire. *Id.* at 558. The evidence at trial did show Chafin had touched the victim's breast at some point in time prior to the return of the indictment and within the applicable statute of limitations; however, all the evidence showed that the breast touching incidents occurred outside Hays County. There was no testimony that Chafin specifically touched the victim's breast while located inside the territorial jurisdiction of Hays County. *Id.* at 558–60. Without such evidence, the appellate court concluded the evidence was legally insufficient to prove the allegations contained in the indictment. *Id.* at 560.

The jurisdictional problems in *Chafin* are not present in the current appeal. L.P. testified the alleged conduct occurred at her father's house, which was located in Lamar County. She testified it occurred during the spring of 2002. Such testimony would satisfy the requirement that the al-leged offense occur within the applicable statute of limitations and before the returning of the grand jury's March 24, 2005, indictment. *See* Tex.Code Crim. Proc. Ann. art. 12.01(5)(B) (limitations), art. 21.02, § 6 (Vernon 1989) (alleged crime must be before return of indictment). There was no testimony regarding extraneous offenses that occurred in other counties. Thus, the confusion presented in *Chafin* (regarding the assignment of specific conduct to specific dates and/or specific locations) is not present in this case. Viewed in the light most favorable to the jury's verdict, L.P.'s testimony provides evidence establishing the essential elements of indecency. *See* Tex. Penal Code Ann. § 21.11. The evidence is, therefore, legally sufficient to support the jury's verdict.

We overrule Pedersen's fifth and sixth points of error.

## II. Did the Trial Court Err By Refusing To Issue a Limiting Instruction (Issue 3)?

In his third point of error, Pedersen contends the trial court erred by denying his request for an oral limiting instruction to the jury, which would have served to narrow the parameters under which the jury would properly be permitted to consider evidence concerning an extraneous offense committed by Pedersen. The testimony at issue came from Susan Dearinger, who was the State's first witness during the guilt/innocence phase of trial; she told the jury that Pedersen had previously pled guilty to, and been placed on community supervision for, the crime of molesting his older daughter, M.L. The State now contends the trial court was not required to give a limiting instruction regarding this evidence. Both parties agree the trial court denied Pedersen's timely request for the oral limiting instruction.

It is helpful to examine the portion of the trial wherein this request for a limiting

instruction arose. At its first mention, Pedersen objected to the injection of the matter of Pedersen's extraneous offense of having sexually molested his older daughter. At that point, the jury was removed, Pedersen questioned Dearinger on voir dire, and after the gist of Dearinger's testimony was developed, the following exchange between Pedersen's attorney (Rodgers) and the trial court followed:

THE COURT: All right. The court rules that this is admissible, that these incidents were—appear to the court to be proven beyond a reasonable doubt. Anything else?

MR. RODGERS: Your Honor, I've got some case law that I have made copies for the court to read. I'm not arguing with the judge's decision on that, but we are entitled to know the basis that the extraneous offense is being admitted. We have got a case that is directly on point, the same situation, siblings, daughters. We argued it ourselves to the Court of Criminal Appeals. We are entitled to know the basis under 404(b).

THE COURT: The basis is that a child molester in one case will be a child molester in another case. Your client has a history of molestation and you opened the door and that's why I'm letting it in. No other reason. He was protected if that door hadn't been opened, but you opened it.

MR. RODGERS: The basis is that it goes to show propensity to commit the crime?

THE COURT: That's part of it.

MR. RODGERS: And that's exactly what the Code of Criminal Procedure said that 404(b) is not admissible for.

THE COURT: Then they need to take another look at the issue. But that opinion, if it is as you represent it, needs to be reviewed.

During this same exchange, Pedersen then requested (and was granted) a running objection to any evidence of extraneous offenses. After having received the running objection, Pedersen requested a limiting instruction be provided to the jury at the time of the admission of evidence regarding extraneous offenses, whereupon the following ensued:

MR. RODGERS: I think we are entitled to a charge at this point in trial that the—the same limiting instructions you get in the jury charge.

THE COURT: Tell me what it is.

MR. RODGERS: They are not to consider it for proof that the defendant committed this particular act but it's being offered for other reasons.

MR. WHELCHEL [for the State]: Judge, that's not necessarily true.

THE COURT: I'm going to tell you frankly I think it is offered for the proof that he committed this act. Child molesters are child molesters, it's been my experience. If the judges in the appellate courts have been around very long, they understand that too.

 A defendant is entitled to an instruction limiting the jury's use of an extraneous offense not only in the jury charge but also at the time the evidence is admitted, if such an instruction is timely requested by the accused. *Rankin v. State*, 974 S.W.2d 707, 713 (Tex.Crim.App. 1996). The failure to give such an instruction at the time the evidence is admitted is error when such an instruction has been requested. *Id.* Taking into account the statements of the trial judge in the exchange recited above, an instruction of the nature requested by Pedersen, if given, would have expressly contradicted the reasons just given by the judge for having allowed the evidence.

The State theorizes that no limiting instruction was required in this case "be-

cause the evidence [of the extraneous offense] was admitted to rebut appellant's unlimited defensive theory and was contextual evidence in light of appellant's defensive strategy." Yet, the State has failed to direct our attention to anything in the record that shows the extraneous offense occurred simultaneously with the molestation of L.P. Such proof would be required to except the now-at-issue extraneous offense evidence from a limiting instruction under the "same transaction contextual offense" exception of the *Rankin* requirement. *See, e.g., Castaldo v. State,* 78 S.W.3d 345, 352 (Tex.Crim.App.2002); *Wesbrook v. State,* 29 S.W.3d 103, 114–15 (Tex.Crim.App.2000); *King v. State,* 189 S.W.3d 347, 356–57 (Tex.App.-Fort Worth 2006, no pet.).

The State's argument on this issue is more appropriate to the consideration of whether such evidence is admissible over a Rule 404(b) objection; the State's argument does nothing to address the proper scope of consideration a jury may have of such evidence. This is a critical distinction because sometimes evidence, although admissible under our Rules of Evidence for certain reasons, can have meanings beyond those proper purposes. When such a situation arises, the trial court may—*and should*—immediately define and limit the jury's ability to consider such evidence to only those areas which are permitted under our Rules of Evidence. Tex.R. Evid. 105; *Rankin,* 974 S.W.2d at 711–13; *see also Delgado v. State,* 235 S.W.3d 244, 250 (Tex.Crim.App.2007) (noting that federal courts will require sua sponte limiting instructions when evidence in question is so

obviously admissible only for limited purpose and to fail to so instruct will clearly threaten serious prejudice to the accused).

We conclude the lower court in this case erred when it denied Pedersen's request for the limiting instruction. *Cf. Rankin,* 974 S.W.2d at 713. The more difficult question, however, is whether the error resulted in sufficient harm to warrant reversal. *Id.; Mendiola v. State,* 995 S.W.2d 175, 183 (Tex.App.-San Antonio 1999), *rev'd on other grounds,* 21 S.W.3d 282 (Tex.Crim.App.2000).

 Except for constitutional errors, an appellate court may not reverse a criminal case unless that error affects the accused's substantial rights. Tex.R.App. P. 44.2. A substantial right is a right that is "affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). An appellate court should ultimately affirm the conviction, despite such an error, "if the appellate court, after examining the record as a whole, has a fair assurance that the error did not influence the jury, or had but slight effect." *Rankin v. State,* 995 S.W.2d 210, 215 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd) (citing *Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim.App.1998)).

There were only two witnesses who testified about the merits of the crime for which Pedersen was then on trial: L.P. (the victim) and Dearinger (the outcry witness).[2] The remaining witnesses who testified during the guilt/innocence phase were there to testify as either character or extraneous offense witnesses.[3]

---

**2.** *See* Tex.Code Crim. Proc. Ann. art. 38.072, § 2 (Vernon 2005) (permitting *only* first person to whom child made outcry to testify about allegation of molestation).

**3.** Pedersen argued that neither M.L.'s testimony nor Paul Dearinger's testimony regard-

ing L.P. was admissible for any purpose. *See* Tex.R. Evid. 404(b) (extraneous offense evidence inadmissible to prove accused acted in conformity therewith); Tex.Code Crim. Proc Ann. art. 38.072 (Vernon 2005) (admission of outcry witness testimony permissible only for offense then being tried).

The extraneous offense evidence concerning M.L. was admitted during the testimony of the State's first trial witness. Until this point, the jury had heard less testimony than fit into twenty pages of the record. After the trial court overruled Pedersen's objection to admission of any testimony concerning the M.L. offense, the jury heard Susan Dearinger testify that Pedersen had admitted in a court of law to having committed those extraneous sex crimes and to having been placed on community supervision for those crimes. Dearinger also told the jury that as a result of Pedersen's plea in the other case, he would have to register as a sex offender for the rest of his life. Additionally, Dearinger made a few attempts to suggestively compare L.P.'s current outcry of abuse to that made by Pedersen's acknowledged victim in the extraneous case.

After L.P. concluded her testimony, the jury heard from six additional witnesses, whose testimonies comprised about ninety additional pages of the reporter's record. From the time it heard Susan Dearinger describe the M.L. molestation outcry until the trial court issued its written charge (six witnesses later), the jury had unfettered discretion or direction as to how it should consider the extraneous offense evidence and how all the other witnesses' testimonies should be evaluated in light of the extraneous offense evidence. Moreover, one of those additional witnesses was M.L. herself; she testified about being fondled by Pedersen on her breast and vaginal areas.

By our estimation, nearly thirty-five percent of the pages in the entire reporter's record of testimony during guilt/innocence touched upon the extraneous offense evidence rather than merely the crime for which Pedersen was then on trial.[4] The jury's unlimited ability to consider the extraneous offense evidence clearly permeated this trial. A casual observer might go so far as to say this trial was as much about the extraneous offense as it was the charged offenses.

The Texas Court of Criminal Appeals has noted:

An instruction given for the first time during the jury charge necessarily leaves a window of time in which the jury can contemplate the evidence in an inappropriate manner. For example, as in this case, if the State offered evidence to show that a defendant accused of child molestation had previously molested two other young girls, then that evidence may properly be considered to show intent to molest the complainant. However, jurors may also improperly use that evidence to form a negative opinion of the defendant prior to receiving limiting instructions from the judge. Jurors cannot be expected to know exactly how to use the evidence unless we tell them, nor can we guarantee that they will "remain open-minded until the presentation of all the evidence and instructions ..." See Morrison v. State, 845 S.W.2d 882, 887 (Tex.Crim.App. 1992). Additionally, we cannot tell how jurors have used the admitted evidence. Thus, the possibility exists that, unless we instruct the jury on evidence concurrently with its admittance, jurors may, unbeknownst to us, use that evidence improperly by forming an indelible per-

---

4. More specifically, the extraneous offense was discussed in the jury's presence at pages 42–47, 48–50, 68–69, 70, 73–74, 77–80, 82–83, 104, 105–107, 130–141, and 142–147, for a total of forty-two pages of testimony. The total testimony heard by the jury covered 121 pages of the record. Thus, approximately 34.71 percent of the pages in the record concerned evidence about the extraneous offense.

ception of the defendant that will work unfairly to his inevitable detriment.

*Rankin,* 974 S.W.2d at 712.

■ Based on our review of the entire record of the guilt/innocence phase of trial, when taking into account the fact that this extraneous offense evidence was admitted at the very earliest stages of the trial on guilt/innocence, when considering the substantial portion of the record devoted to questioning the witnesses about this extraneous offense, and when factoring in the length of time the jury had unfettered discretion to compare this extraneous offense evidence to L.P.'s accusations of molestation before receiving the trial court's written jury charge, we cannot say with fair assurance that the trial court's error did not influence the jury's verdict or had but slight effect in this trial. We must, therefore, conclude the trial court's error injured Pedersen's substantial rights.

The Texas Rules of Appellate Procedure mandate that we reverse the trial court's judgment of conviction and remand this case for a new trial. *Cf. Roberts v. State,* 29 S.W.3d 596, 601–02 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd) (extraneous offense evidence had "substantial and injurious influence" on jury's verdict); *and contrast Salazar v. State,* 222 S.W.3d 10, 17 (Tex.App.-Amarillo 2006, pet. ref'd) (only ten percent of trial devoted to extraneous offense evidence, which all came during State's final three witnesses); *Jones v. State,* 119 S.W.3d 412, 424–25 (Tex.App.-Fort Worth 2003, no pet.) (extraneous offense evidence admitted near end of trial, short time interval between admission of extraneous offense testimony and promulgation of trial court's written charge that included limiting instruction).

## III. Pedersen's Remaining Points of Error

Pedersen raises several additional points of error. Assuming, without so deciding, that he could prevail upon any of these other issues, none would entitle him to greater relief than can be accorded in this case given our disposition of his third issue. We, therefore, decline to address Pedersen's remaining issues.

We reverse the judgment of the trial court and remand this case to the trial court for a new trial.