In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-11-00691-CR
_____

DAVID ALEXANDER HUNTER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 410th District Court
Montgomery County, Texas
Trial Cause No. 10-07-08140 CR

**MEMORANDUM OPINION**

In this appeal, David Alexander Hunter contends he is entitled to a new trial because the trial court denied Hunter's request to be tried separately on count one and count two of his indictment, and because the trial court failed to grant his request for a contemporaneous limiting instruction when admitting evidence that was relevant to his other sexual acts. In his third issue, Hunter contends the trial court erred by allowing a witness to comment on the credibility of one of the complaining witnesses.

1

We conclude the trial court did not abuse its discretion by denying Hunter's motion to sever. We further conclude the trial court's failure to give the jury a contemporaneous instruction when admitting evidence of Hunter's extraneous sexual acts, as Hunter requested, was harmless. Finally, we conclude that Hunter's complaint concerning one witness's comment about another witness's credibility was not properly preserved for review on appeal.

Background

In two counts, the State charged Hunter for the aggravated sexual assault of A.R., a child, and for the exposure of his genitals to S.H., a child. The offense in count one allegedly occurred or about November 24, 2008. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(ii), (2)(B), (f)(1) (West Supp. 2012).[1] The offense in count two allegedly occurred on or about November 23, 2008. *See id.* § 21.11(a)(2)(A) (West 2011).

Following a jury trial, the jury found Hunter guilty on both counts. On count one, the jury recommended a sentence of fifty years in prison and a $10,000 fine. On count two, the jury recommended a sentence of ten years in prison and a $10,000 fine. The trial court rendered judgment on the jury's verdicts and ordered that Hunter serve his sentences concurrently.

---

[1] When subsequent amendments do not affect our analysis, we cite the current version of the statute.

## Severance

In his first issue, Hunter contends the trial court erred in denying his motions to sever the offenses and to grant separate trials. According to Hunter, he would have been acquitted on the charge of indecency with a child, the subject of count two of the indictment, had the State been required to try that crime separately from count one.

The State is authorized to prosecute a defendant in a single criminal action if the alleged offenses arise out of the same criminal episode. *See* Tex. Penal Code Ann. § 3.02(a) (West 2011). Section 3.01 of the Penal Code provides that the term "'criminal episode' means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person . . . [if] the offenses are the repeated commission of the same or similar offenses." *Id.* § 3.01 (West 2011). In Hunter's case, the trial court could reasonably conclude that the two offenses at issue were part of the same criminal episode because they were the repeated commission of the same or similar offenses. *See Casey v. State*, 349 S.W.3d 825, 830-31 (Tex. App.—El Paso 2011, pet. ref'd) (concluding that the defendant was not entitled to a severance in a case involving a six count indictment which alleged various types of sexual offenses against different children).

A ruling on a motion to sever is reviewed under an abuse of discretion standard. *Salazar v. State*, 127 S.W.3d 355, 365 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Although defendants faced with a trial involving multiple offenses arising from the same criminal episode have a general right to a severance under section 3.04 of the Penal Code, defendants accused of offenses arising under sections 21.11 (Indecency With a Child) and 22.021 (Aggravated Sexual Assault) do not have a general right to separate trials; they are entitled to a severance only if necessary to prevent unfair prejudice. Tex. Penal Code Ann. § 3.03(b)(2)(A) (West Supp. 2012), § 3.04(a), (c) (West 2011) (providing a right to sever in cases combining the offenses like those in Hunter's case only when "the court determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses"); *see also Lane v. State*, 174 S.W.3d 376, 380 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (explaining that when "the State joins certain sexual offenses against victims under seventeen years old, a defendant's right to severance is limited and severance is not required in the absence of unfair prejudice"). When section 3.04(c) of the Penal Code, which governs severances for the alleged crimes at issue in Hunter's case, applies "the defendant must show some type of prejudice beyond that which a defendant would automatically face in any case in which felony counts are joined." *Casey*, 349 S.W.3d at 832.

Hunter argues that the evidence admitted during his trial to show that he was guilty of indecency with a child was weak; he contends that if the cases had not been joined, the jury would have acquitted him of that offense. However, had the trial court granted Hunter's request for a separate trial, the evidence relevant to Hunter's aggravated sexual assault would have been admissible because he claimed that the complaint concerning the charge of indecency was fabricated. *See Hulsey v. State*, 211 S.W.3d 853, 858 (Tex. App.—Waco 2006, no pet.); *Salazar*, 127 S.W.3d at 365-66. And, Hunter has not argued that if the cases had been severed, he would not have claimed that the allegations were fabricated.

When ruling on the motion to sever, the trial court was on notice that Hunter intended to rely on fabrication in defending against offenses with which he was charged. In his second motion to sever, Hunter asserted that "the allegations by [S.H.] are in retaliation to [his] motion to increase child support." In final argument, Hunter's attorney suggested that the claims of the child victims were fabricated. Therefore, the trial court's assumption that Hunter would rely on a claim of fabrication during trial was not unreasonable.

Based on the record before us, the trial court's conclusion that Hunter would not be unfairly prejudiced if it denied Hunter's motions to sever is supported by the record, and its denial of Hunter's requests for a severance has not been shown to

5

have been an abuse of discretion. *See Salazar*, 127 S.W.3d at 358, 365-66 (holding no abuse of discretion shown where trial court conducted a single trial involving four counts of sexual abuse of four separate children that spanned a three month time period). We overrule issue one.

Extraneous Offense Instruction

In his second issue, Hunter argues he is entitled to a new trial because the trial court denied his request for a limiting instruction, an instruction that is generally required when a trial court chooses to admit evidence of other crimes, acts or wrongs. *See* Tex. R. Evid. 105(a) (authorizing limiting instruction when evidence is admitted for a limited purpose); Tex. R. Evid. 404(b) (providing that evidence of other crimes is not admissible to prove character, but may be admissible for other purposes). Because the trial court admitted evidence of other crimes involving children, Hunter asserts he should receive a new trial.

When relevant, a statute provides that evidence of extraneous acts committed by a defendant against child victims is to be admitted. Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West Supp. 2012) (providing that extraneous offense evidence of defendant's acts against the child victim "shall be admitted for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant

6

and the child"). However, when such evidence is admitted, trial courts are generally required to give the jury a limiting instruction to guide the jury's use of the evidence in an attempt to limit the jury's consideration of the evidence to the purpose for which the evidence was admitted. *See generally* Tex. R. Evid. 105(a); *Phillips v. State*, 193 S.W.3d 904, 911-12 (Tex. Crim. App. 2006). The limiting instruction is also generally required to be given to the jury at the time the evidence is admitted. *See* Tex. R. Evid. 105(a); *Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996); *see also* Tex. R. Evid. 404(b).

Hunter requested limiting instructions regarding evidence of his extraneous offenses at two points during the trial. He asked for a limiting instruction when the State asked to introduce a medical chart created by Araceli Desmarais, a sexual assault nurse examiner, which documented the results of S.H.'s sexual assault examination. In addition to the act on which the jury's finding of indecency was based, the patient history in the chart at issue refers to several other sexual acts that S.H. attributed to Hunter.[2] Hunter also asked the trial court to give the jury a limiting instruction after S.H.'s counselor, Jana Null, testified that S.H. told her

---

[2]S.H. was seven or eight years old when the offense occurred and eleven years old at the time of trial. At the conclusion of testimony, the State elected to seek a conviction on the last of multiple acts for which evidence had been admitted during the trial. *See Phillips v. State*, 193 S.W.3d 904, 909-10 (Tex. Crim. App. 2006). The act of exposure occurred during an assault.

that if Hunter cared about her "he wouldn't have sexually abused [S.H.] and wouldn't have choked her." Both of Hunter's requests were denied.

Rule 105 of the Texas Rules of Evidence requires that a trial court, at the defendant's request, give a contemporaneous instruction when admitting evidence of extraneous crimes for a limited purpose. *See* Tex. R. Evid. 105(a); *Rankin*, 974 S.W.2d at 713. We hold the trial court erred by failing to grant Hunter's request for contemporaneous limiting instructions with respect to the evidence of extraneous crimes at issue.

Although we have determined the trial court erred by denying Hunter's requests for limiting instructions, for the error to be reversible the record must demonstrate that the omission of the instructions was harmful. *See Jones v. State*, 944 S.W.2d 642, 653-54 (Tex. Crim. App. 1996). Rule 44.2(b) of the Texas Rules of Appellate Procedure provides the standard for determining whether the trial court's failure to provide the limiting instruction at issue caused reversible harm. *See* Tex. R. App. P. 44.2(b); *Rankin v. State*, 995 S.W.2d 210, 215 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Under Rule 44.2(b), we disregard the error unless the error affected Hunter's substantial rights. Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271

8

(Tex. Crim. App. 1997). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has a fair assurance that the error did not influence the jury, or had but a slight effect." *Rankin*, 995 S.W.2d at 215 (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

In determining whether the failure to provide timely limiting instructions deprived Hunter of a substantial right, we consider the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how the failure to provide a limiting instruction should be considered in connection with other evidence admitted during trial. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *see also* Tex. R. App. P. 44.2(b). According to Hunter, by depriving him of contemporaneous instructions, the jury was allowed to improperly utilize the evidence of his extraneous offenses to bolster S.H.'s credibility. In considering Hunter's argument, we note that after the jury was seated, the trial court instructed the jury not to "form opinions about the case before you have heard everything." Twenty-five witnesses testified during the guilt-innocence phase of the trial, so the jury had a significant amount of fact and expert witness testimony to consider in determining who to believe. Additionally,

both S.H. and Hunter testified during the guilt-innocence phase of the trial, so the jury was given the opportunity to judge their credibility based on their appearances at trial.

A review of the testimony from the trial reflects that S.H. testified about the types of sexual acts that Hunter committed in her presence; her testimony is generally consistent with the sexual acts mentioned in the nurse examiner's report. Additionally, Null's testimony referencing an incident of choking was not mentioned again in other testimony or in the parties' arguments. The record also shows that Hunter's attorney cross-examined S.H. extensively during the guilt-innocence phase of the trial, testing S.H.'s credibility before the jury. And, Hunter testified in his defense during the guilt-innocence phase of the trial. According to Hunter, he never had sexual contact with S.H., and he specifically denied having committed the types of sexual acts mentioned in the nurse examiner's report. After Hunter's attorney finished, the State cross-examined Hunter and attacked inconsistencies in his statements and testimony in an effort to discredit him.

In final argument, Hunter's attorney argued that she did not believe that S.H. was trying to lie, suggesting instead that S.H. had made the allegations about Hunter up "to please the person who was asking her a question" and "trying very hard to give the answer that she thought the questioner wanted to hear." In final

argument, the prosecutor pointed out that S.H. gave people consistent versions about what happened to her, including the nurse examiner. And, in rebuttal, the prosecutor asked the jury to judge S.H.'s credibility based on her testimony and appearance during the trial. In the charge, the trial court instructed the jurors that they were "the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given to the testimony[.]"

Having reviewed the record as a whole, we conclude the State did not utilize the references to Hunter's extraneous crimes during closing argument in an objectionable manner to improperly bolster the credibility of S.H.; instead, the prosecutor told the jurors they were the sole judges of the credibility of the witnesses, and emphasized that S.H.'s credibility should be judged primarily on her appearance and the testimony she gave at trial. While the trial court erred by failing to give the jury a timely limiting instruction with respect to the evidence at issue, the evidence was otherwise properly before the jury because it had bearing with respect to the jury understanding the previous and subsequent relationship that existed between Hunter and S.H. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2. In our opinion, the extraneous offense evidence at issue is not inflammatory aside from what it reveals about the nature of the relationship that existed between Hunter and S.H.

11

Considering the record as a whole, including the evidence of Hunter's guilt, we believe the trial court's failure to give the jury timely limiting instructions did not influence the jury or had only slight effect with respect to the jury's evaluating S.H.'s credibility. We have fair assurance that the jury determined whether S.H. was credible based on her own testimony and the testimony of the other witnesses that provided testimony relevant to Hunter's act of indecent exposure. We hold the trial court's error did not deprive Hunter of a substantial right. *See* Tex. R. App. P. 44.2(b); *Rankin*, 995 S.W.2d at 215.

## Comment on Credibility

In his third issue, Hunter contends the trial court erred in allowing the sexual assault nurse examiner, Desmarais, to directly comment on S.H.'s credibility. According to Desmarais, she performed a complete examination of S.H. approximately two years after S.H. was last assaulted. Desmarais testified that the vaginal and anal examinations she performed on S.H. were normal. At that point, the prosecutor asked Desmarais:

> Q. So it's not uncommon for a child who has been sexually assaulted through the anus for several years not to have markings?
>
> A. No. And it's really rare to have injuries in the anus, at least at our clinic, because like I said, it's an organ used to being stretched and then because a lot of the kids don't outcry until way later.

12

Q. So when you're doing a sexual assault exam and doing a diagnosis of this child, what is the most important information you get during your examination?

A. What the child tells me happened to them.

Q. And that would be the history from the child?

A. Yes.

Q. Now, the information that [S.H.] gave you and what you saw of the child's demeanor and how she reacted, is that consistent with sexual abuse of her -- of sexual abuse of [S.H.]?

A. Yes.

Q. And did you find that as an impression of what you believe has occurred to [S.H.]?

A. Yes.

The prosecutor then passed the witness.

Hunter contends that Desmarais's last two answers amount to a comment on the child's credibility. Given the context of the questions, we do not agree that a question asking a health care provider whether negative findings are nevertheless consistent with the provider's impression amounts to a comment about the patient's credibility. Nevertheless, Hunter did not object when Desmarais was asked if the exam was consistent with sexual abuse or about her impression. *See* Tex. R. App. P. 33.1.

13

Hunter argues that he preserved error during Desmarais's expert qualification hearing by objecting to the admission of Desmarais's records. During Desmarais's direct testimony, Hunter's attorney restated his objection concerning Desmarais's records:

> . . . Your Honor, also as to these records, I would like to renew my previous objections; but I'd also ask to add, and like as I stated earlier, from these records it is not for medical purposes. They were taken over a year later. So it is not an authentic then existing medical situation. So it's improper hearsay. It's also bolstering what [S.H.] is expected to say later; and I think under a 403 analysis, it's more prejudicial than it is probative.

Hunter's objection to Desmarais's records did not alert the trial court that Hunter also had objections to Desmarais's trial testimony about the impressions she gained by examining S.H. Preserving error for appellate review requires the complaining party to show that the trial court was given an opportunity to rule on a contested matter through a timely filed request, objection, or motion, and to show the trial court ruled on the request. *See id.* Because Hunter failed to first present his complaint that Desmarais commented on S.H.'s credibility when she answered the questions at issue, the trial court never ruled on his complaint; consequently, Hunter's complaint that the testimony amounted to an improper comment was not preserved for appeal. *See id.* We overrule issue three and affirm the judgment of the trial court.

14

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 7, 2013
Opinion Delivered September 25, 2013
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

15