**Opinion issued December 19, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00334-CR

————————————

**RAINBOW CANNELL AKA RAINBOW CONTI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No 1**
**Galveston County, Texas**
**Trial Court Case No. 287854**

---

## MEMORANDUM OPINION

Rainbow Cannell was convicted by a jury of failing to report child abuse[1]

based on evidence that Cannell knew her daughter, M.S., was being sexually

---

[1]     TEX. FAM. CODE ANN. § 261.109(a) (West Supp. 2012) ("A person commits an offense if the person has cause to believe that a child's physical or mental health

abused by Cannell's current husband, yet failed to report the information. The trial court sentenced Cannell to 150 days' confinement in the Galveston County jail with no fine. Cannell raises seven issues which can be grouped into four categories of alleged trial court error: (1) allowing testimony about an extraneous offenses, (2) failing to give a contemporaneous limiting instruction, then giving the wrong instruction, (3) admitting evidence of another extraneous offense even though the State failed to give notice of its intent to use that evidence, as well as an argument that (4) there was insufficient evidence of at least one element of the offense to find Cannell guilty.

We affirm.

## Background

Cannell is the mother of M.S. and two other children. Michael Conti is Cannell's husband. M.S. testified that Conti told her that he had sexual feelings for her in the summer of 2008, when she was 14 years old. While M.S. could not recall the precise date of this conversation, she stated that it occurred shortly before she attended one of three summer camps. Within a week of returning from camp, Conti began to force M.S. to witness him masturbate when they were alone. It quickly progressed, and he began to physically force her to assist him in these acts and to make her pose for him unclothed. M.S. testified that he began touching her

_____

or welfare has been or may be adversely affected by abuse or neglect and knowingly fails to report as provided in this chapter.").

inappropriately soon thereafter. These incidents occurred between late-July and early-October 2008. During the same summer, Cannell and Conti married, after at least six years as a couple.

M.S. testified that she told her mother in a private conversation what Conti was doing to her. Using a memorable event as a reference point, she said the conversation happened before Hurricane Ike, which made landfall on September 13, 2008. Cannell asked her 14-year-old daughter to decide whether they needed to leave Conti. Concerned with how they would survive, M.S. said no.[2] After Hurricane Ike, M.S. told her mother that the abuse was continuing. Cannell again asked M.S. to make the decision if she and the kids needed to leave; M.S. said no.

In late-September, Cannell and Conti met with M.S. and discussed the abuse. Cannell told M.S. "that she knew. And she was wondering do we need to leave because it was a very adult decision, but I [M.S.] needed to make it." Cannell and Conti announced that they could "fix this and heal the family again." Cannell and Conti offered to allow M.S. to watch them have sex in case she was "curious." M.S. was asked at trial, "And are you 100 percent sure that you told your mother what Michael [Conti] was doing to you?" She answered, "Yes." M.S. testified that,

---

[2]     There was testimony that Cannell led her children to believe she was dying from an illness. The prosecution indicated this deception added to M.S.'s fears about survival.

to her knowledge, Cannell never alerted authorities that Conti was sexually abusing her.

The school counselor became involved on October 3 and, a few days later, the Department of Family Protective Services interviewed M.S., Cannell and Conti. Cannell told the DFPS employee, Jasmine Paddio, that she was aware of the abuse. Paddio told Cannel that either Conti had to leave the family home or the children, including M.S., would be removed for their protection. Cannell told Paddio that she was "sticking by her husband." The children were placed with Lori Warren, a family friend.

Although M.S. could not place the events of that summer in exact order on cross-examination, she was clear that all of these events occurred and that she told Cannell about the abuse both before and after Hurricane Ike. While both Lori Warren and Jasmine Paddio testified about their interactions with Cannell and M.S., neither had direct information about the chronology of MS.'s outcries to her mother. Neither Cannell nor Conti testified. Therefore, the only evidence establishing the sequence of these events came from M.S., who said she told her mother at least twice about the abuse, yet nothing happened.

## Extraneous offense evidence

In two issues, Cannell complains of the trial court's admission of evidence that she had cause to believe there might have been abuse of M.S. approximately six years earlier but failed to report those concerns.

### A.    The challenged testimony

In addition to testifying about the sexual abuse by Conti that occurred in the summer of 2008—for which Cannell was charged with failure to report—M.S. also testified about a previous sexually inappropriate event involving Conti. She said that, at the young age of 7 or 8, she told her mother that Conti was doing inappropriate things to her. She could not recall the details of Conti's actions but described them at trial as "very adult." She testified that her mother failed to report the information then as well. Due to the length of time that had passed and her young age, M.S. said she did not remember clearly what happened. Nonetheless, she was certain that Conti did "sexual" things to her, again describing them as "very adult actions." She testified that when she went to her mother for help, her mother asked her, a young child, for guidance whether they "needed to leave." Subsequently, Cannell informed M.S. that she asked Conti about the accusations and Conti denied them. According to M.S., Cannell did not report the events, and "nothing happened" as a result of her plea to her mother for help. This occurred around 2001.

Cannell objected to the extraneous evidence. The State countered that evidence that Cannell had knowledge of possible abuse previously and likewise failed to report that information in 2001, in violation of section 261.109(a) concerning failure to report child abuse, was admissible to show Cannell's motive for failing to report the subsequent abuse in 2008. The trial court denied Cannell's objection and admitted the evidence.

## B.  Admissible for non-conformity purpose

We turn first to issue two and address whether the extraneous evidence met an exception to rule 404's general exclusionary rule. TEX. R. EVID. 404(b) (stating that evidence of other crimes, wrongs or acts is not admissible to prove character conformity then offering non-exclusive list of exceptions to rule).

### 1.  Standards for admissibility and review

Evidence of a prior bad act is inadmissible if offered to prove that the defendant has a bad character or that his actions were in conformity with bad character. TEX. R. EVID. 404(b). Evidence of other wrongs is admissible, however, if it (1) is introduced for a purpose other than character conformity, (2) has relevance to a "fact of consequence" in the case, and (3) remains free of any other constitutional or statutory prohibitions. *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996). Examples of permissible bases for admitting extraneous evidence are listed in rule 404(b) and include motive, intent, identity, plan, and

knowledge of the defendant. TEX. R. EVID. 404(b). Other valid uses of extraneous evidence are to help prove a contested element of the alleged crime and to rebut a defensive theory in the case. TEX. R. EVID. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991) (op. on reh'g) (contested element); *Blackwell v. State*, 193 S.W.3d 1, 9 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (rebut defensive theory).

Once a Rule 404(b) objection is made, the trial court must conduct a relevancy analysis to examine whether "the evidence makes a *fact of consequence* in the case more or less likely." *Rankin*, 974 S.W.2d at 709. The burden is on the party seeking to admit the evidence to show a valid use of the otherwise inadmissible evidence. *See Montgomery*, 810 S.W.2d at 387–88. If no valid exception exists, it is error to admit the evidence. *See id.*

When reviewing a trial court's evidentiary ruling, we use the abuse of discretion standard. *See id.* at 390. The question is whether the court acted "without reference to any guiding rules and principles," making the ruling arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). So long as the trial court followed the proper guiding rules and principles to reach its decision and that decision is within the "zone of reasonable disagreement," we will affirm the evidentiary ruling. *See De la Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). Notably, a trial court

should favor admission of extraneous offense evidence in close cases, as this is "in keeping with the presumption of admissibility of relevant evidence." *Montgomery*, 810 S.W.2d at 389.

### 2. The State's argument for admissibility

The State argued to the trial court that the extraneous evidence of failure to report possible abuse of M.S. approximately seven years earlier was admissible to establish Cannell's motive for failing to report the abuse that occurred in 2008. Motive was relevant because Cannell's defensive theory was that, to the extent she failed to report, it was because she did not have cause to believe Conti was abusing M.S. This theory is based, in part, on Cannell's other defensive theory that M.S. was lying to her mother about the abuse. Thus, the State's argument for admissibility can be phrased as a motive exception or, more precisely, rebuttal to a defensive theory. *Cf.* TEX. R. EVID. 801(e)(1)(B) (providing that testimony consistent with prior statement offered to rebut charge of recent fabrication is not hearsay); *see Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990) ("If the trial court's decision is correct on any legal theory of law applicable to the case, however, it will be sustained"); *Salas v. State*, 629 S.W.2d 796, 798 (Tex. App.—Houston [14th Dist.] 1981, no pet.) (holding that a ruling on admissibility of evidence will be affirmed if correct, even if reasoning was incorrect).

### 3. How extraneous offense shows motive and rebuts defensive theory

The State claimed that the information M.S. told Cannell in 2008 gave Cannell sufficient cause to believe M.S. was being abused and to require Cannell to report the abuse, which she failed to do. Much of the evidence of Cannell's knowledge about M.S's abuse came from M.S.'s testimony about their private conversations. There were no witnesses to these conversations except, on at least one occasion, Conti himself. Neither Cannell nor Conti testified. Thus, the State was relying on a single witness (M.S.) to prove the content of these conversations and establish an element of the charged offense, i.e., that Cannell knew enough to cause her to believe there was abuse. Under these circumstances, M.S.'s credibility was a central issue at trial.

To challenge M.S.'s credibility, Cannell vigorously cross-examined her regarding inconsistencies between prior statements she made when the abuse was first investigated and later court proceedings. She pointed out that M.S. denied the abuse the first time anyone of authority confronted her about it in October 2008 and, likewise, she initially denied that she had told her mother about it. Cannell also questioned M.S. about her description of the abuse to the DFPS, noting that M.S. was currently testifying that the abuse occurred too many times to count and often happened every other day, yet she described it as much less frequent in her

DFPS interview. Cannell also attempted to impeach her daughter on her prior description of specific aspects of the abuse.

Cannell raised these issues to create an impression that M.S. was not credible. Cannell suggested to the jury that M.S. concocted this story in response to other events in the family, namely her mother's wedding to Conti and the birth of a younger sibling. Cannell explicitly argued to the jury that M.S. was lying:

> So, my question to you is, you know, if this very smart, very articulate, very beautiful young lady who has got a lot of personality, who is polite, who was very, very self-assured in the courtroom, if she is able to go into those situations and not tell the truth by her own admission, is she worthy of belief? And my suggestion to you is that she is not.

Cannell then argued that the information Cannell received about the abuse was insufficient to trigger the reporting requirement because M.S. could  not be believed:

> If somebody just comes to you and says something, particularly somebody like [M.S.] who is so capable of not telling the truth, would that automatically in your mind give you cause to believe . . . that must be the truth? . . . So, what was reasonable? . . . Would she owe it to her husband to look into the facts, to investigate it a little bit knowing her daughter the way that she does?

The State offered this extraneous evidence to rebut Cannell's defensive theory that M.S. was lying and, to use their terms, to establish that Cannell knew of the abuse but had a motive not to report it. Its theory was that Cannell was motivated by her desire to protect her husband from M.S.'s allegations. Her failure

10

to report was not a result of inadequate information being provided to her but was, instead, the result of Cannell's repeated decision to take her husband's side at the expense of her daughter's health and well-being.

This extraneous offense evidence was relevant to counter Cannell's defensive theory that M.S. was lying both about the abuse and about telling Cannell it had occurred. *See Crank v. State*, 761 S.W.2d 328, 341 (Tex. Crim. App. 1998) ("Probably the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory"), *overruled on other grounds by Alford v. State*, 866 S.W.2d 619 (Tex. Crim. App. 1993); *see also Albrecht v. State*, 486 S.W.2d 97, 100–01 (Tex. Crim. App. 1972) ("Evidence of extraneous offenses committed by the accused has been held admissible . . . [t]o refute a defensive theory raised by the accused."); *Blackwell*, 193 S.W.3d at 9 (holding that extraneous offense may be admissible to rebut a defensive theory). Cannell's theory that she did not have cause to believe there was a real danger of abuse because M.S. was lying in retaliation for her marriage to Conti is contradicted by the evidence that Cannell also failed to report the possibility of abuse six years earlier when M.S. told her Conti was acting inappropriately. We conclude that evidence of the prior failure to report was relevant to rebut Cannell's defensive theory and to establish Cannell's motive—she was going to side with her

11

husband against her daughter even though she had adequate information to cause her to believe M.S. was being sexually abused by him.

Accordingly, we overrule issue two.

**C.  Whether jury could have believed beyond a reasonable doubt that the extraneous offense occurred**

Before admitting evidence of an extraneous offense, a trial court must determine that "a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense." *Harrell v. State*, 884 S.W.2d 154, 160 (Tex. Crim. App. 1994); s*ee also George v. State*, 890 S.W.2d 73, 76 (Tex. Crim. App. 1994). The court assesses the strength of the evidence that the prior bad act occurred at a hearing under Rule 104(b). *Harrell*, 884 S.W. 2d at 160–61. On appeal, that assessment is reviewed based on all the evidence, including evidence admitted after the trial court's ruling. *Fischer v. State*, 268 S.W.3d 552, 557 (Tex. Crim. App. 2008). Cannell claims that the "State failed to prove the extraneous offense beyond a reasonable doubt" and that the State's evidence was legally insufficient to meet it burden of proof. The extraneous offense here was not the alleged sexual misconduct by Conti; it was the extraneous offense of Cannell's alleged failure to report possible sexual abuse.

**1.  Standard of review**

We review a trial court's admission of extraneous offense evidence under an abuse of discretion standard. *Page v. State,* 137 S.W.3d 75, 78 (Tex. Crim. App.

12

2004); *Jabari v. State,* 273 S.W.3d 745, 751 (Tex. App.—Houston [1st Dist.] 2008, no pet.). This standard of review is the same as the standard of review for other evidentiary rulings. *See Montgomery*, 810 S.W.2d at 380. A trial court's decision to admit evidence will be affirmed if it was within the "zone of reasonable disagreement" and reached through application of proper guiding rules and principles. *See De la Paz*, 279 S.W.3d at 343–44.

Whether the extraneous offense was committed is a "condition of fact" that must be established to make the extraneous offense relevant and admissible. *See* TEX. R. EVID. 104(b). "Whether a conditional fact has been proven is a question for the jury, and the trial judge's role is limited to determining whether there is sufficient evidence to support such a finding. In other words, the trial judge should admit evidence that is relevant based upon a conditional fact only if there is sufficient evidence to support a jury finding that the conditional fact is true. . . . The trial judge does not abuse his or her discretion in admitting evidence where he or she reasonably believes that a reasonable juror could find that [the conditional fact is true]." *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007).

In other words, the trial court does not abuse its discretion admitting evidence of an extraneous offense so long as there was sufficient evidence of the offense for a rational juror to find beyond a reasonable doubt that the offense was committed. *See id.*; *see also Tienda v. State*, 358 S.W.3d 633 (Tex. Crim. App.

13

2012) (holding that "trial court itself need not be persuaded . . . [instead, the] question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that [the conditional fact is true]. Appellate review of a trial court's ruling on such a preliminary question of admissibility is deferential; the standard is abuse of discretion."); *cf. Fischer v. State*, 235 S.W.3d 470, 473 (Tex. App.—San Antonio 2007) *rev'd on other grounds,* 268 S.W.3d 552 (Tex. Crim. App. 2008) ("As long as the trial court's decision—that a jury could reasonably find beyond a reasonable doubt that Fischer committed the extraneous offense—was within the zone of reasonable disagreement, we must affirm the trial court's decision. In determining whether the trial court abused its discretion, we believe a legal sufficiency review is instructive."). Thus, if there is legally sufficient evidence from which a jury could find the extraneous offense occurred, the trial court does not abuse its discretion in admitting evidence of the offense.

## 2. Legally sufficient evidence that Cannell failed to report possibility of abuse in the past[3]

M.S. testified that, when she was about eight years old, she told her mother about inappropriate sexual activity by Conti that was happening at the time. M.S. did not recall the details, but testified that Conti was doing "sexual" things to her that were "very adult actions." M.S. testified that her mother did not tell the authorities and, as a result, "nothing happened." While there were no other witnesses who testified about these statements by M.S. to her mother, the testimony of a complainant alone may be sufficient for a jury to conclude, beyond a reasonable doubt, that the crime occurred. *See, e.g., Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004) (holding that testimony of a child victim alone is sufficient to support a conviction for indecency with a child), *aff'd on other grounds*, 206 S.W.3d 620 (Tex. Crim. App. 2006).

Cannell contends that the elements of the crime of failure to report child abuse were not demonstrated because M.S. offered no details and, therefore, "it is unknown . . . what was told to [Cannell], when [Cannell] was told, and what

---

[3]  Although the trial court did not make an explicit finding on the strength of the evidence of the earlier alleged failure to report abuse, "we assume that the court made implicit findings that support its ruling, provided those implied findings are supported by the record." *Wiley v. State*, 388 S.W.3d 807, 816 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (quoting *Flores v. State,* 177 S.W.3d 8, 14 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (discussing failure to make findings on a motion to suppress).

[Cannell] was under a duty to report." She contends that M.S.'s description could be consistent with simply showing her "adult movies on television" or "talk[ing] with her about the birds and bees." We disagree.

While M.S. could not remember the details of the events, she made statements to Cannell about Conti's "actions," that is, what "he did." And what he did was sufficiently disturbing to M.S. that she went to her mother for help. According to M.S., Cannell asked Conti about the accusations, which further indicates that the events were serious in nature. Additionally, a jury reasonably could decide that behavior a young child can remember only as "sexual" and involving "very adult actions" would create in a mother "cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse." TEX. FAM. CODE ANN. § 261.109(a) (West Supp. 2012) (including the existence of a "cause to believe" as an element of the offense of failure to report child abuse). The State did not have to prove that abuse in fact occurred; it merely had to prove that Cannell had "cause to believe" it had or may occur. *Porter v. State*, 121 S.W.3d 404, 407 (Tex. App.—Amarillo 2003, pet. ref'd) (holding "that actual abuse or neglect is not a separate element of the offense"); *White v. State*, 50 S.W.3d 31, 40–41 (Tex. App.—Waco 2001, pet. ref'd) (specifying the elements of the offense). A jury would be reasonable to conclude that, if Cannell had reported

what her young daughter said, the result would have been anything other than the "nothing" that M.S. experienced.

Cannell next argues that there was insufficient evidence that she actually failed to report M.S.'s prior accusations to law enforcement or CPS. The only evidence on the reporting issue was M.S.'s testimony that her mother did not report it and did "nothing" in response to her outcry. M.S. testified that no one from CPS or law enforcement spoke with her at the time of the prior abuse, around 2001. Cannell contends that M.S. simply might not recall that a CPS investigator or police officer contacted her. But that is a matter for cross-examination, not an assertion of an absence of evidence as part of a sufficiency challenge to the evidence. Besides, if contrary evidence existed that Cannell did report abuse concerns to the authorities in 2001, Cannell could have presented that evidence from police or CPS records.

Cannell further contends that it is possible that she made a report to CPS or the police but they decided not to conduct an investigation. This appellate argument is inconsistent with the defensive theory presented at trial—that Cannell failed to report because she did not have cause to believe real abuse was happening based on Cannell's contention M.S. could not be trusted to be truthful. Regardless, Cannell offered no records supporting her current contention that she may have reported the abuse. Based on the parties' theories of the case at trial and the

17

evidence presented, a jury would be reasonable to infer both that an investigation would have ensued if M.S.'s complaint had been reported to the authorities and that M.S. would have been interviewed. M.S.'s testimony that "nothing" happened is at least a modicum of evidence supporting the conclusion that Cannell did not report M.S.'s 2001 complaint to any authorities.

Thus, we conclude that the trial court did not err in finding that a reasonable jury could conclude beyond a reasonable doubt that Cannell committed the extraneous offense of failing to report child abuse around 2001 or in overruling Cannell's trial objection to the admission of evidence on that offense. In doing so, we note that the trial court instructed the jury that, to consider the extraneous offense, they had to find that Cannell committed that offense beyond a reasonable doubt. Accordingly, we overrule Cannell's first issue.

## Limiting Instruction

In issue three, Cannell complains that the trial court failed to give a limiting instruction contemporaneous with the admission of this extraneous evidence. In a related point, she raises as issue four that the trial court's subsequent limiting instruction—which was included in the jury charge—misstated the evidentiary exception relied on by the State and, therefore, was erroneous. We turn first to her complaint that the limiting instruction was not contemporaneous with the admission of the evidence.

18

## A.    Contemporaneous

When extraneous offense evidence is admitted, a trial court is required to instruct the jury on the restricted use(s) for which the evidence may be considered. TEX. R. EVID. 105(a). The rule does not specify when the limiting instruction must be given; however, the Court of Criminal Appeals has held that it should be given "at the first opportunity." *Rankin*, 974 S.W.2d at 712 (rejecting contention that the timing of the limiting instruction is discretionary with the trial court and holding that trial court erred in waiting until jury charge to give instruction on extraneous offense evidence); *see also Lemmons v. State*, 75 S.W.3d 513, 525 (Tex. App.— San Antonio 2002, pet. ref'd) (holding that trial court erred by not giving limiting instruction when evidence of extraneous offense was admitted). "An instruction given for the first time during the jury charge necessarily leaves a window of time in which the jury can contemplate the evidence in an inappropriate manner." *Rankin*, 974 S.W.2d at 712. Here, Cannell requested a limiting instruction immediately after her objection was overruled. The trial court erred in not giving the instruction at that time.

We next examine whether the error was harmless. *See Rankin*, 974 S.W.2d at 713. Cannell must show that a substantial right was affected by the error, meaning that the error had a substantial and injurious effect or influence on the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997);

19

*Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). If our review of the record as a whole gives us a fair assurance that the error did not substantially influence the jury, or had but a slight effect, then we find the error to be harmless. *See Johnson*, 967 S.W.2d at 417; *Rankin*, 995 S.W.2d 210, 215 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

An example of a harmless-error finding based on a delayed limiting instruction can be found in the *Rankin* case. 995 S.W.2d at 215. On remand, our sister court held that the trial court's error delaying the limiting instruction until the jury charge was given was harmless because there was no evidence the jury formed an opinion based on the extraneous offense evidence before receiving the limiting instruction, the indictment that was read to the jury was clear which bad acts were the basis for the criminal charge against the defendant, and there was little danger that the jury would misconstrue the purpose for which the evidence was admitted. *Id.*

Likewise, harmless error has been found when a limiting instruction was given in a capital murder case "three or four hours" after the trial court admitted evidence of three extraneous robberies. *See Lemmons*, 75 S.W.3d at 525 ("Given the short amount of time that passed from the introduction of the extraneous-offense evidence to the trial court's reading of the instruction to the jury, the trial court's error did not affect a substantial right.").

Here, the objection and request for a limiting instruction were made at 1:00 p.m. on the second day of trial, during M.S.'s testimony. After she testified, the State presented Jasmine Paddio and Lori Warren, who finished testifying at 3:20 p.m. that same day. That concluded the presentation of all of the evidence at trial. At 10:00 a.m. the following day, the charge—including the limiting instruction—was read to the jury. Thus, less than three hours of testimony was received between the two events, and fewer than 24 total hours had passed. Additionally, these were the only three witnesses who testified in the guilt-innocence phase of the trial.

The issues presented to the jury were not so confusing to prevent them from recalling the testimony they heard from this limited number of witnesses or to understand to which evidence the limiting instruction should be applied. Further, both the State and Cannell focused their questions of the witnesses on the events that occurred during the summer of 2008. Little time was spent testifying about the prior abuse, and there is little chance of confusion about the events. Finally, there was no evidence this jury actually was confused or misapplied the law to the evidence admitted. *See Rankin*, 995 S.W.2d at 215 (finding lack of evidence of jury confusion relevant to harm analysis).

Under these circumstances, including the short amount of time between the evidence being admitted and the limiting instruction given, the limited number of

witnesses and issues before the jury, and the lack of evidence the error affected the jury, we hold that the error in not timely giving the requested limiting instruction was harmless.

## B.    Limiting instruction specified intent, not motive

In her fourth issue, Cannell complains that the limiting instruction given to the jury misstated the exception to the exclusionary rule under which the extraneous offense evidence was admitted. The State argued that it was admissible to show Cannell's motive for failing to report abuse. The trial court told the jury in the court's charge it was relevant to Cannell's intent.

Cannell admits that she did not object to the wording of the limiting instruction when given. As a result, Cannell must show that the error caused egregious harm to obtain a reversal. *See Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009) (explaining that the error must be "so egregious and create[ ] such harm that the defendant did not have a fair and impartial trial.").

We consider the entire jury charge, the state of the evidence (including the contested issues and the weight of the probative evidence), the final arguments of the parties, and any other relevant evidence to evaluate whether harm was egregious. *See Allen v. State*, 253 S.W.3d 260, 263–64 (Tex. Crim. App. 2008). The purpose of this evaluation is to determine whether "the case for conviction or punishment was actually made clearly and significantly more persuasive by the

error." *Hernandez v. State*, 340 S.W.3d 55, 62 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991).

The elements of the crime of failing to report child abuse are as follows: (1) the defendant; (2) has cause to believe that a child had been or may be abused or neglected; and (3) knowingly failed to report this abuse or neglect. *White*, 50 S.W.3d at 40–41; *see also Morris v. State*, 833 S.W.2d 624, 627 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd), *cert. denied*, 507 U.S. 961 (1993). The difference between instructing the jury that it could only consider the evidence for the purpose of determining Cannell's intent rather than her motive is minor. As discussed earlier, we have concluded that the evidence of M.S.'s complaint to her mother about Conti's "very adult actions" and her mother's failure to report it around 2001 was relevant to Cannell's motive for not reporting the 2008 accusations—that is, whether she failed to report M.S's accusations because she thought her daughter was reacting to her new marriage in 2008 and the birth of her sibling around 2001 or, instead, because Cannell chose to "stick by" her husband and allow the abuse to continue.

If Cannell did not report M.S's accusations because she thought her daughter brought them for the sole purpose of harming Conti, she arguably did not have cause to believe that M.S. had been abused. In other words, her reason or motive

23

for not reporting the accusations was that she did not believe, and did not have cause to believe, Conti had abused M.S. While this is different than concluding that she may not have intentionally failed to report abuse because she did not believe M.S. that anything had happened, the difference between her motive and her intent under these circumstances is not so vast as to make the erroneous instruction egregious error.

Besides, our review of the record reveals that Cannell was the source of any confusion whether motive or intent was the correct exception for which a limiting instruction should be given. The request for the limiting instruction was as follows:

> And Your Honor, we would ask the court to give the jury a limiting instruction pursuant to Rule – I think it's 105 on the reason for the State's being allowed to admit this into evidence. I believe they stated it is to show motive or intent. I can't remember what they said earlier, but we'd ask for a limiting instruction.

Cannell should not be permitted to invite error by erroneously telling the court the issue possibly concerns one exception then later appeal the trial court's failure to specify a different exception in the charge, particularly when Cannell failed to assert any objection to the language. *Cf. Arkoma Basin Exploration Co., Inc. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008) (stating that "the cardinal rule for preserving error is that an objection must be clear enough to give the trial court an opportunity to correct it.").

Because we conclude that the trial court's instruction to consider the extraneous offense for intent instead of motive did not cause egregious harm, we overrule issue four.

## Other "extraneous evidence"

In issue five, Cannell challenges a portion of the testimony of Lori Warren, which Cannell characterizes as evidence of an "extraneous offense." Lori, a former friend of Cannell's, testified that she took photographs at the Cannell-Conti wedding in late-July. She went to the Conti house the next day to deliver them. There, she witnessed Conti with his hand inappropriately placed just beneath M.S.'s breast as he sat next to M.S. on the couch. She testified that Conti also was looking down at M.S.'s breasts.

Lori confronted Cannell that day with what she had seen and told Cannell that she thought it was inappropriate. Cannell responded that Conti was "just learning how to be a good father."

Cannell sought to exclude Lori's testimony about this event and what she and Cannell said to each other afterwards on the basis that the State did not give her adequate pre-trial notice of its intent to admit this "extraneous offense evidence." Cannell's position is that this is a distinct episode of failure to report abuse for which pre-trial notice was required. We disagree.

The behavior Lori reported witnessing occurred in the midst of the on-going sexual abuse, based on the description of the chronology M.S. provided. She testified that Conti confronted her with his sexual feelings before one of her summer camps, began masturbating in front of her in July, began inappropriately touching her soon thereafter, and continued to do so through early-October. Lori's confrontation with Cannell and Cannell's failure to act on the information from her friend did not create a distinct bad act by Cannell. Instead, these events were part of the same set of events that put Cannell on notice that Conti might be abusing M.S. and, thus, triggered Cannell's duty to report.

Because the testimony did not concern a separate extraneous offense, prior notice under Rule 404 was not required. The trial court did not abuse its discretion in overruling Cannell's objection. *Cf. Romero*, 800 S.W.2d at 543–44 (holding that admissibility of evidence will be sustained if outcome is correct on any theory of law applicable to case even if trial court's reasoning for holding was incorrect).

**The duty to report**

Cannell's sixth and seventh issues focus on the statutory provision specifying to whom a person who suspects child abuse can report her concerns. The statute provides multiple reporting options in order to encourage and facilitate the reporting of such abuse. A report can be made to

    (1)    [A]ny local or state law enforcement agency;

> (2) The department[4];
>
> (3) The state agency that operates, licenses, certifies, or registers the facility in which the alleged abuse or neglect occurred; or
>
> (4) The agency designated by the court to be responsible for the protection of children.

TEX. FAM. CODE ANN. § 261.103(a)(1–4) (West 2009). A person is required to make a report if the person has reason to believe abuse has or will occur:

> (a) A person having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person shall immediately make a report as provided by this subchapter.

TEX. FAM. CODE ANN. § 261.101(a) (West 2009). Section 261.109 of the statute criminalizes the knowing failure to make such a report:

> (a) A person commits an offense if the person has cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect and knowingly fails to report as provided in this chapter

TEX. FAM. CODE ANN. § 261.109(a) (West Supp. 2012).[5]

In her sixth issue, Cannell argues that the existence of options to whom a person who suspects abuse may report creates a legal requirement that the State disprove the possibility that she told either a law enforcement agency or DFPS. In

---

[4] § 261.001(2) defines "department" as the Department of Family and Protective Services. TEX. FAM. CODE ANN. § 261.001(2) (West Supp. 2012).

[5] This is the version of the statute in effect when the case was tried. The statute changed effective September 1, 2013; however, the changes were not substantive. *See* TEX. FAM. CODE ANN. § 261.109(a) (West, Westlaw through 2013 Sess.)

her seventh issue, she argues that this created a jury charge error related to the elements of the offense.

## A. Charge error

The jury charge described the offense as knowingly failing to report abuse "to any local or state law enforcement agency and/or the Department of Family and Protective Services." According to Cannell, the charge was erroneous because it did not state "all the elements of the statute required to convict" her and failed to "accurately charge the jury on the necessary elements of the offense." Specifically, the use of "and" in the charge required her to report the offense to both the police and DFPS, when the statute only requires her to report the case to either entity. Thus, if the jury concluded she "failed to report the alleged abuse to CPS but had a reasonable doubt as to whether [she] reported the abuse to law enforcement," it would have erroneously found her guilty.

The elements of the crime of failing to report child abuse are as follows: (1) the defendant; (2) has cause to believe that a child had been or may be abused or neglected; and (3) knowingly failed to report this abuse or neglect. *White*, 50 S.W.3d at 41 (specifying the elements of offense); *Porter*, 121 S.W.3d at 406–07 (listing elements of offense and holding that it does not include element that abuse or neglect actually occurred); *Morris*, 833 S.W.2d at 627.

Under section 261.103(a), the report can be made to a law enforcement agency or the DFPS or one of two other options. *Cf. Morris*, 833 S.W.2d at 628 (approving jury charge that the defendant could have reported to the "Texas Department of Human Services or any local or state law enforcement agency."). We agree that the trial court should not have used the phrase "and/or" and that it created an ambiguity about whether Cannell was required to report the alleged abuse to either DFPS or the police or to both DFPS and the police. "Many courts and critics have denounced the use of 'and/or' in legal writing" because it "leads to ambiguity and confusion." *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 689 (Tex. 2012). *See, e.g.*, *State ex rel. Adler v. Douglas*, 95 S.W.2d 1179, 1180 (Mo. 1936) (en banc) ("The use of the symbol 'and/or' ... should be condemned by every court."); TEX. L. REV. MANUAL ON USAGE & STYLE 1.42 (Tex. L. Rev. Ass'n ed., 12th ed. 2011) ("Do not use and/or in legal writing."). The term inherently leads to ambiguity and confusion. *Cf. Cochrane v. Fl. E. Coast Ry. Co.*, 145 So. 217, 218–19 (Fla. 1932) ("It is one of those inexcusable barbarisms"); WILLIAM STRUNK, JR. & E.B. WHITE, THE ELEMENTS OF STYLE 40 (4th ed. 2000); *see also* BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE 1.80 (2nd ed. 2006). Accordingly, we conclude the trial court's inclusion of the term "and/or" in the charge was erroneous.[6]

---

[6] Despite the ambiguity "and/or" creates and the repeated calls to avoid its use, the

29

But Cannell did not object to this part of the charge and, therefore, the error does not require reversal unless it was egregious, such that it denied Cannell a fair trial. *See Sakil*, 287 S.W.3d at 26; *Almanza v. State*, 686 S.W.2d 157, 171–73 (Tex. Crim. App. 1984) (en banc) (setting forth egregious harm analysis of charge error using term "or" instead of "and" without objection). Egregious harm exists if the record shows Cannell's rights suffered actual, rather than merely theoretical, harm from the jury-charge error. *See Almanza*, 686 S.W.2d at 174. Jury-charge error is egregious if it affected the very basis of the case, deprived Cannell of a valuable right, vitally affected a defensive theory, or made the case for conviction clearly and significantly more persuasive. *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). To determine whether non-objected-to charge error caused egregious harm, we consider the entire charge, the evidence (including the contested issues and weight of the probative evidence), the arguments of counsel, and any other relevant information revealed by the record as a whole. *See id.*;

---

phrase does have a commonly accepted meaning: it means "the one or the other or both." Bryan A. Garner, *Garner's Dictionary of Legal Usage* at 57 (3d ed. 2011) (citing *Amalgamated Transit Union v. Mass.*, 666 F.2d 618, 627 (1st Cir. 1981)). Garner uses a mathematical approach to explain: "x and/or y = x or y or both." *Id.* Following this approach, Cannell was guilty unless she reported it to x (any local or state law enforcement agency) or y (the DFPS) or both. Stated a third way, Cannell was guilty if she failed to report to any option individually or any combination of options collectively. Inclusion of the term "and/or" was erroneous because it created an ambiguity; however, it did not actually alter the elements of the offense nor lessen the State's burden of proof at trial.

*Almanza*, 686 S.W.2d at 171. The ambiguity did not result in egregious harm under the circumstances of this case.

It is clear from the jury argument from both the State and Cannell's counsel that the State was claiming Cannell did not report the abuse at all. In contrast, Cannell argued—not that she told the police or even that she possibly told the police—that M.S. was not credible and, therefore, Cannell had no reason to believe there was abuse and no reason to file any report:

> The issue—the primary issue that you've got to decide is just as the Judge has instructed you. On October the 3rd, 2008, October 3rd, 2008, did she have cause to believe that [M.S.] that her physical or mental welfare was in jeopardy? . . . I submit to you that her testimony is not credible, that by her own admission she lies whenever she needs to. She says what she wants to say, and I would submit to you that you should find my client not guilty.

In response, the State argued Cannell knew enough to trigger the requirement to report abuse but failed to report it to anyone:

> Rainbow allowed [M.S.] to continually be abused. Rainbow didn't report the abuse to law enforcement or Child Protective Services or anyone . . . Didn't report Michael to authorities . . . So, no, Rainbow was not going to report Michael because she wanted Michael to be there and she was going to let him do whatever he wanted . . . . We all know that Rainbow didn't report it because we all know that—we know that Jasmine said that there was no report filed. And we know that she just wouldn't report it because all she cared about was Michael, and she didn't care what happened to [M.S.] . . . And the one way to make Rainbow pay for betraying her daughter, to make Rainbow pay for failing to report child abuse is when you go back in the jury deliberation room, you sign on this top line guilty.

31

Thus, the jury argument clearly informed the jury that the State was arguing Cannell did not report the abuse to anyone, while Cannell countered that she did not have a valid reason to believe there was abuse. The evidence framed the issues in a similar manner. M.S. testified that she told her mother who did "nothing." Paddio and Lori testified Cannell admitted to them she knew about Conti's abuse of M.S. but decided to handle it "as a family." Given the way the issues were presented to the jury, we conclude that the jury-charge error did not confuse the issues or change the burden in a manner that would result in egregious harm. Again, the current appellate theory that Cannell might have reported abuse is wholly inconsistent with the theory presented at trial leading to the court's charge—that Cannell was correct not to report the abuse because M.S. could not be believed when she said Conti abused her.

Had the trial court used a hypothetically correct charge with the conjunction "or," the jury's focus in resolving the competing theories would have been the same. Either the jury believed M.S. and the State that M.S. told her mother at least twice yet her mother failed to act or it believed Cannell's theory that M.S. made the whole thing up and could not be trusted to tell the truth. An alternative, third theory that Cannell wanted to protect her daughter and reported the matter to any authority was never presented. The jury chose to accept the State's theory and disregard Cannell's lack-of-credibility defense. We conclude that presenting the

issues under a hypothetically correct jury charge would not have altered the case or deprived Cannell of a valuable right; therefore, Cannell was not adversely affected by the charge as submitted. We hold that the charge error did not cause egregious harm.

## B. Sufficiency of evidence she failed to tell police

In her seventh and final issue, Cannell contends that that the absence of evidence that she failed to tell the police of the abuse requires her conviction be reversed on sufficiency of the evidence grounds. Cannell contends that, "[w]hile the State produced sufficient evidence to show [Cannell] failed to make a report to CPS, the State failed to show that [she] failed to notify law enforcement." Cannell asserts that, by focusing on the DFPS, the State neglected to offer evidence of failure to report to the police, thereby creating a sufficiency issue on appeal. We disagree.

Cannell admits that sufficiency of the evidence is measured, not against the actual jury charge given, but against a "hypothetically correct jury charge." *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc) (establishing rule).When a party challenges the sufficiency of the evidence against her, we are to view all of the evidence in the light most favorable to the verdict, asking if a rational trier-of-fact could find the elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 901–02 (Tex. Crim. App.

33

2010) (holding that legal sufficiency standard and factual sufficiency standard are indistinguishable in a criminal case and that the *Jackson v. Virginia* standard would apply at all subsequent sufficiency challenges).

There is ample testimony from which the jury could infer that Cannell did not report the abuse to anyone of authority. M.S. testified that she told Cannell about the abuse before she evacuated for Hurricane Ike, which hit the area on September 13—three weeks before DFPS interviewed the family. *Cf. Rodriguez v. State*, 47 S.W.3d 86, 89 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (holding that defendant's failure to report abuse to police officer at time he came to door to investigate was adequate for conviction; there was evidence defendant knew of abuse for weeks); *Porter*, 121 S.W.3d at 409–10 (affirming conviction of daycare owner for failing to report neglect same day she received information that employee accidentally left child unattended in van for more than one hour).

M.S. testified that the issue of the abuse spurred a family meeting in late-September where Cannell admitted she knew it was happening. M.S. stated that her mother and step-father announced that they could "fix this" as a family, indicating that no report was made to law enforcement. Cannell also admitted to Lori that she knew of the allegations before DFPS interviewed her. Lori testified that she had a phone conversation with Cannell the day of the DFPS interview and Cannell told her "how mad she was at [M.S.], how mad she was at Michael [Conti], that they

had worked it out and they had fixed it as a family[, and] how [M.S.] had ruined everything for her." Thus, Lori's testimony confirms M.S.'s testimony that Cannell kept the matter within the family; she did not report it. Lori also testified that Cannell said "it wasn't as bad as she had thought or imagined." A jury could reasonably conclude that this testimony further supported the conclusion that Cannell reported the abuse to no one.

Paddio, the DFPS employee, testified that she confronted Cannell about the allegations and understood that Cannell already knew:

Q: Let's go to the conversation with Rainbow. What were you talking with her about?

A: Basically I informed her on the sexual abuse outcry from [M.S.]

Q: And what did – what did she say back to you?

A: She was aware of the abuse, and they were working out – it out as a family.

Q: Did she say she was aware of the abuse before you told her?

A: Correct.

In November, after DFPS intervened, Lori had another conversation with Cannell during which Cannell seemed "almost giddy." Cannell told Lori "that she has met with—they had met with Michael [Conti's] lawyer and that they had figured out how to defend him . . . they were either going to say that she was crazy or promiscuous." A month later Cannell was explaining her feelings about M.S. to

35

Lori and said "[h]ow mad she was, that she had ruined everything for her, that Michael was her family. Without Michael, she didn't have a family; and he paid her bills."

Finally, Cannell's apparent solution of the problem of her husband having sexual feelings for her 14-year-old daughter was to offer to allow M.S. to watch the couple have sex. M.S. testified that this occurred in September.

These are not the types of statements or actions a jury reasonably would attribute to a mother who reported her husband's abuse of her daughter to anyone of authority. Instead, they tend to prove that Cannell did not report the abuse and was upset when the authorities became involved. We conclude that there was sufficient evidence that Cannell failed to report the abuse.

## Conclusion

Having disposed of all issues raised on appeal, we affirm the trial court's judgment.

Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).